### THOMAS SIBLEY *vs.* DOROTHY WILLIAMS, EX'R OF WALTER WILLIAMS.—*December*, 1830.

An action may be maintained by a creditor of a testator, against the executor of his executor, suggesting a *devastavit* by the first executor of the goods of his testator.

The statute, 30 *Chas*, 2, *ch.* 7, and a part of 4 and 5, *Will. and Mary*, *ch.* 24, are in force in this State. They concerned the administration of justice, and it has always been understood, that the judges under the old government, laid it down as a general rule, that all statutes for the administration of justice, whether made before or after the provincial charter, so far as they were applicable, should be adopted.

Under the act of 1798, *ch.* 101, *sub-ch.* 14, *sec.* 2, it is clear that the Legislature did not mean to make any thing, the subject of administration in the hands of the adm'r, *d. b. n.* which did not exist in specie. The act of 1820, *ch.* 174, *sec.* 3, extended such an administration, to bonds, notes, accounts and evidences of debt, which a deceased executor or administrator may have taken, received, or had in that character, and to money in his hands, and gives power to the adm'r *d. b. n.* to recover the same by an action on the bond.

APPEAL from *Montgomery* County Court.

This was an action of *Debt*, instituted on the 3d July, 1827, by the appellant, against the appellee. The declaration was as follows :

*Dorothy Williams*, late of, &c. executor of the last will and testament of *Walter Williams*, late of the said county, deceased, which said *Walter Williams* was in his life-time, the executor of the last will and testament of *Leonard Wil-*

*liams*, late of said county deceased, was summoned to answer unto *Thomas Sibley*, in a plea that she render unto him the sum of fifty-three dollars and a half, current money, which from him she unjustly detained, &c. and whereupon the said *Thomas*, &c. says, that whereas the said *Leonard Williams* in his life-time, to wit, on the 16th October, 1818, at the county aforesaid, by his certain writing obligatory, commonly called a single bill, (now here to the court shewn, the date of which is the day and year aforesaid,) twelve months after the date thereof, promised to pay, or cause to be paid unto *Ann Williams*, who hath since intermarried with the said *Thomas Sibley*, by which said marriage, the right to sue for and recover the said debt, hath devolved upon the said *Thomas*, the sum of fifty-three dollars and a half, current money, with interest from the date thereof. Nevertheless, the said *Leonard Williams* in his life-time, and the said *Walter Williams* in his life-time, after the death of the said *Leonard Williams*, and the said *Dorothy Williams*, since the death of the said *Walter Williams*, although often thereunto requested by the said *Ann Williams*, whilst she was sole, and by the said *Thomas*, since his intermarriage aforesaid, the said sum of money, or any part thereof, have not, nor hath either of them been rendered or paid to the said *Ann*, whilst she was sole, or to the said *Thomas* since his intermarriage aforesaid, but the same, &c. wherefore the said *Thomas* says, he is injured, &c. and the said *Thomas* further saith, that the said *Walter Williams*, as executor of the said *Leonard Williams* as aforesaid, received in his life-time, and took possession of the assets, goods, chattels, rights and credits which were of the said *Leonard Williams* at the time of his death, of great value, to wit, of the value of $5000, and wasted, destroyed, and converted the same to his own use in his life-time, to wit, &c.

To this declaration, the defendant demurred generally, and the plaintiff having joined in demurrer, the County Court, (KILGOUR AND WILKINSON, A. J.) gave judgment for the defendant. The plaintiff appealed to this court.

Sibley *vs.* Williams, Ex'r of Williams.—1830.

The cause was submitted on notes, to BUCHANAN, C. J., EARLE, MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Z. Magruder,* on the part of the appellant, contended,

1. That where assets in the hands of an executor or administrator are converted into money or wasted, it is not necessary for the creditor to obtain letters of administration *d. b. n.,* but he may recover against his executor or administrator the assets so converted, or his proportionable part thereof.  2. That it does not appear but that *Walter Williams* was an executor *de son tort,* in which case the plaintiff might have no other redress, and the court below was bound to give judgment for the plaintiff, if any case could by possibility have happened, that might, if *true,* have enabled the plaintiff to recover immediately of the defendant.

At the common law, the executor of an executor was placed in the same situation with the original executor himself, and was bound to administer the estate of the testator, and was subject to all the responsibilities of the original executor. *Toll. Law of Ex'r,* 44.  He could collect the debts due the testator, and lawfully dispose of his property; and his rights and liabilities continued to his executor in the same way, so long as the line of executors remained unbroken by intestacy.  If however, the executor died and left no will, and the assets were not fully administered, it was necessary to have letters *d. b. n. cum. test. annexo,* and such administrator was entitled to all the goods, &c. which remained in specie.  3 *Bac. Ab.* 19.  *Tit. Ex'r and Adm'r.*  If however, the property had been wasted or converted, the administrator *d. b. n.* had no remedy at law.  The unlawful act of the executor being considered one of those injuries, the remedy for which, died with the person.  3 *Bac. Ab.* 99. The creditors, however, might proceed in equity to follow the fund so wasted.  (*Ib. in notis.*)  "It was, however, found inconvenient that creditors, upon the death of an executor *de son tort,* or one who had made an alteration in the goods of the testator, should be without remedy at law, and

therefore by *Stat.* 30 *Car.* 2 *C.* 7, creditors were allowed to recover their debts of executors, or administrators of executors *de son tort*, and 4 and 5, *William and Mary, ch.* 24, extended the same remedy, so as to include executors or administrators of right, where there had been a *devastavit* of the testator or intestate." 3 *Bac. Ab.* 99. It will be seen upon reference to *Kilty's* report upon the British Statutes, that both these statutes had been in use and practised under, previous to the adoption of the constitution; though he considers them as unnecessary to be incorporated with our laws, because superseded by the act of 1798, *ch.* 101, *sub-ch.* 8, *sec.* 5, which renders executors, &c. liable to be sued in any action that could have been maintained against the deceased, with some exceptions. Assuming the proposition that these statutes have been used and practised under in *Maryland*, previous to the adoption of the constitution, they must be now in force, unless repealed by some statute of this State. (*Bill of rights.*) If the acts of assembly made since, are examined, it will be seen that neither of them is inconsistent with or repugnant to them; on the contrary, some of them seem to have had these very statutes in contemplation. It is said that the act of 1798, *ch.* 101, *sub-ch.* 5, *sec.* 6, makes it necessary that an administrator *d. b. n.* should be appointed; and because it is there said "that in no case shall an executor of an executor, be entitled as such to administration *d. b. n.*" it it supposed, the statutes aforesaid are repealed, as the beginning and concluding sections of the act of 1798 repeals all laws inconsistent with, or repugnant thereto. But this hypothesis must be incorrect; because, 1st. The words "administration *d. b. n.*" in that section, relate manifestly to such goods, &c. as remained in specie and unadministered, and not to such as have been converted, wasted or destroyed. 2d. In the same law, (1798, *ch.* 101, *sub-ch.* 14, *sec.* 2,) the authority of an administrator *d. b. n.* is expressly limited and confined to things, not converted into money, and not distributed, delivered or retained by the first administrator. 3d. The administrator in the

same act, *sub-ch.* 8, *sec.* 10, in certain cases is allowed to retain money.

As the administrator *d. b. n.* could not, under the act of 1798, get possession of property converted by the first administrator, or its value, the creditor would have been without remedy after a conversion, except in equity, unless the statute 4 *and* 5, *William* and *Mary, ch.* 24, was suffered to remain; and certainly it is not to be presumed, unless some express enactment can be shewn to that effect, that the legislature intended to take away or narrow down any remedy, that creditors, before that time, had against those who wrongfully wasted or converted the goods of deceased persons. Both these statutes are upon the same footing, and there is no reason to suppose the one repealed more than the other. Suppose them repealed, and what becomes of the remedy of the creditor against an executor *de son tort,* who has obtained property under a fraudulent bill of sale? Such an instrument is binding upon the administrator of the vendor, and if the vendee disposes of the property, or consumes it, or dies, the creditor is without remedy, unless he can pursue the executor or administrator immediately. Upon the whole then, it seems clear that the act of 1798, *ch.* 101, did not alter the liability of an executor or administrator, who had converted the property of his testator or intestate, and that it did not in any manner repeal the statute 30 *Car.* 2 *C.* 7, or 4 *and* 5, *William and Mary, ch.* 24. The act of 1798, *ch.* 101, did make some change in the duties of executors and administrators, as to the marshaling of the assets. For he is there directed to make a rateable distribution of the assets among the creditors of the same grade—*sub-ch.* 8, *sec.* 10, directs how this is to be done, and *sub-ch.* 8 *sec.* 16, directs the publication of the time of distribution. Should the executor or administrator receive money, and instead of distributing it among creditors, use it himself, he renders himself liable to the creditors for their respective proportions of the money so used. The act of 1802, *ch.* 101, *sec.* 1, directed that the propor-

tion of assets should be assessed by a jury. The 6th and 7th sections of the same act contain a provision directing a *sci. fa.* against an administrator whose letters are revoked, where there was a *devastavit*, and then nothing seems more clear than that the *sci. fa.* might also be directed to his executor or administrator in case of his death. This provision has never been repealed. The act of 1820, *chap.* 174, *sec.* 3, 4, 5, 6, provides a mode by which an administrator *d. b. n.* may be put in possession of the fund left by the first administrator, but does not pretend to take away any liability of the executor or administrator of the deceased. If the fund does pass into the hands of the administrator *d. b. n.* it would be a defence to the action—So it would be a defence by an executor *de son tort*, that he had delivered the property in controversy, to the true executor before action brought—The general reasoning of the court in *The State vs. Blackiston*, 2 *Harr. and Gill*, 139, favors this position.

It does not appear but that the testamentary bond of *Walter Williams* is dated before the passage of the act of 1820. It seems to me questionable, whether an administrator *d. b. n.* could recover on such a bond for a breach, not within the terms of the condition, because it alters the nature of it, and the act of 1820, *ch.* 174, would not be allowed so to operate. Previous to that act, no suit could be maintained on it by an administrator *d. b. n.* for goods converted. It is evident that an action could not be sustained on the testamentary bond of the defendant, because the property of *Leonard Williams*, never came into her hands, being all wasted by *Walter Williams;* so that even if letters *d. b. n.* were taken out on *Leonard Williams'* estate, there could be no recovery if the goods were wasted before 1820, and such is the fact, though it does not appear upon the record. This matter is mentioned by way of showing that the plaintiff would have no redress, unless by the present action.

Let the court also suppose, that the plaintiff's claim is the only one unsettled, in an estate of five or six thousand dol-

lars: that the balance of the estate belonged to *Walter Williams*, who wasted or converted it: that if the plaintiff should fail in this action, he can in no way recover his debt without obtaining letters *d. b. n.* and reducing into possession by an action against the defendant, the whole of the personal estate wasted by *Walter Williams*, and that the balance of the estate goes to the defendant. Would not this be an unnecessarily roundabout way to effect what might be done immediately, and without vexation to either party? Should the court also suppose that *Walter Williams*, as residuary legatee in *Leonard Williams'* will, gave bond *to* pay debts and legacies according to 1798, *ch.* 101, *sub-ch.* 14, *sec.* 6, (and I am not certain whether such is not the fact,) can there be letters *d. b. n.* granted? or if granted, how would an action be sustained by the administrator *d. b. n.* on such bond, there being no inventory, &c.? The creditor is not bound to sue on the bond in the first instance; on the contrary, such a bond is a testamentary bond within the meaning of the act to prevent rigorous prosecution of testamentary and administration bonds, and the creditor would have to proceed on it against the executor, and have a *non est* or *nulla bona* returned before he could sue the bond.

It is not necessary that such matters should be stated in the declaration. In actions against the executor of an executor, it is only necessary to declare in common form, that the debtor, nor his executor, nor the executor of the executor, paid the money, and the general conclusion of law is, that the executor is bound unless he shows in his plea to the contrary. *Vide* 1 *Harr. Ent.*

In 1785, ch. 80, sec. 2, the heir or devisee is bound in the same way. The defendant as residuary legatee of *Walter Williams*, is entitled to letters *d. b. n.* on *Leonard Williams'* estate. Should she take out letters *d. b. n.* no proceeding would or could be taken by her to recover the property converted, and the plaintiff would have to rely on the same acts now before the court. She, as executrix of her husband, would be bound by his bond, and could not sue herself.

Upon the second point, I refer to *Ord vs. Fenwick*, 3 *East.* 104, where in an action by an administrator, he declared in *assumpsit* for money paid by him as administrator, to the use of defendant. It was objected that such an action could not be supported by him as administrator, but must be brought in his own name. But the court said that if any case could be put, where the administrator could be supposed to have paid money as administrator, the judgment must be for him. The rule to be drawn from this case is equally applicable, when the administrator is defendant, and it seems that the judgment here ought to be reversed, if the plaintiff can show *any case* where an executor of an executor would be liable; and surely the executor of an executor *de son tort*, who has property under a fraudulent bill of sale, and converts it into money and dies, is liable to the creditors of the vendor either under 30 *Car.* 2, *ch.* 7, *or* 1798, *ch.* 101, *ch.* 8, *sec.* 5; for there the property never could by any possibility whatever, go into the hands of the administrator *d. b. n.* as this court has determined in *Dorsey vs. Smithson*, 6 *Harr. and Johns.* 61. So it is also, as 1 contend, when a bond is given by a residuary legatee, to pay debts and legacies when it would be impossible to come at the property, there being no inventory, and if letters *d. b. n.* were granted, they would be nugatory. Such a bond would be conclusive to bind the defendant in this action, and she could not dispute the fact of the conversion of assets by *Walter Williams.*

On these grounds the plaintiff contends that the judgment of the court below ought to be reversed, and a judgment given for the appellant.

*F. S. Key*, for the appellee, contended:

The counsel for the plaintiff has ingeniously called to his aid two *English* statutes, entirely inconsistent with our testamentary system. They were necessary in England, for there the granting of letters testamentary *de bonis non*,

was confined to particular cases, so that the remedy given by those statutes was necessary. Here it is otherwise. There is no case where an executor or administrator dies without finally settling the intestate or testator's estate, that letters *d. b. n.* are not grantable, and not only grantable, but required to be granted. And nothing can be done with the unadministered assets in any other way. 1798, *ch.* 101, *sub-ch.* 5, *sec.* 6. If a creditor can come at them by an immediate suit against the executor or administrator of the first executor or administrator, why may not a distributee? and how are their proportions of such assets to be ascertained? and how is the bond of the second administrator to be made liable for the faithful administration of these unadministered assets, left by the first executor or administrator? for it is plain that the condition of the bond of the second administrator or executor, only applies to the estate of the person on which he administers, and not to the estate of another person on whom that person administered. There is moreover, no privity between these two administrators. Our system is an improvement upon the testamentary law of *England*. We require that what is left unadministered, shall be again brought under administration, and pass through the Orphans Court, under letters *de bonis non*. Then there will be a bond to secure their faithful administration, and a tribunal to ascertain the proportions, settle the accounts, and order distribution. Where there has been a *devastavit*, it is the same thing. Still by the section above quoted, there must be letters *d. b. n.*, for the estate is not "fully administered." Nor is there any difficulty about the administrator *d. b. n.* having a right to recover the wasted assets, either under the law of 1798 or of 1820. The power conferred on such administrator by the law of 1798, *ch.* 101, *sub-ch.* 14, *sec.* 2, is to "administer all things herein described as assets," (i. e. "every species of personal property,") "not converted into money, and not distributed or delivered, or retained by the former executor or administrator under the court's direction." The law

meant to include every thing that could be administered. The exception of things converted into money is corrected by the law of 1820.

That exception however, was an inadvertence. The law which had before required administrator *d. b. n.* wherever the estate was not fully administered of itself, gave to the administrator *d. b. n.* complete power over every thing not fully administered, and this is a better provision for creditors, and all persons interested in the estate, than the one afforded by the English statutes relied on.

As to the plaintiff's second objection, if the first executor being an executor *de son tort,* was necessary to enable the plaintiff to recover, it was an essential part of his case, and should have been alleged in his declaration. It is charged that he was executor, and this must be taken as lawful executor.

ARCHER, J., delivered the opinion of the court.

This is an action of *debt,* against the executor of an executor, on a single bill, suggesting a *devastavit,* by the first executor of the goods of his testator, and the question submitted by the demurrer is, whether the action is maintainable. At common law, no executor was answerable for a *devastavit* by his principal. 1 *Saund.* 219, *no. C.* 2. *Bac. Abrid.* 445, and the reason assigned in the latter authority, was because such executor could not be supposed to know, how his testator had disposed of the goods, and therefore this was esteemed *actio personalis, quæ moritur cum persona.* But it being found inconvenient, that when an executor made an alteration of the goods of the testator and died, that creditors to the first testator should be disappointed in the collection of their debts, a statute was passed in the 30th year, *Chas.* 2d. *ch.* 7, giving to creditors a right to recover their debts of the executors and administrators of executors in their own wrong. In 4 *and* 5, *Williams and Mary, ch.* 24, it is recited that it had been doubted whether 30 *Chas.* 2, *ch.* 7, extended to any executor or any administrator of

an executor or administrator of right, who for want of privity in law was not before answerable, and is "enacted and declared that all and every the executor and executors, administrator and administrators of such executor or administrator of right, who shall waste or convert to his own use, goods, chattels or estate, of his testator or intestate, shall from thenceforth be liable and chargeable in *the same manner as his or their testator or intestate should or might have been.*" *Williams* in his notes on *Saunders*, 1 *vol.* 219. *i. e.* in pointing out the distinction between an action against the executor himself upon a judgment suggesting a *devastavit* by him, and one against the executor of such executor, suggesting a *devastavit* by the former executor, says, the former action can only be brought upon a judgment previously obtained against the executor, *de bonis testatoris,* or where he is made a party to a judgment against a testator by *scire facias ;* but in *the other*, an action may be brought in every case where the executor in his life-time, was in any way guilty of any act which amounts in law to a *devastavit*, and this position is clearly sanctioned, by the very words of the statute of *William and Mary*, which makes such executor " chargeable in the same manner as his testator should or might have been."

There can be little doubt, but that these statutes were in force in this State. They concerned the administration of justice, and it has always been understood that the judges under the old government laid it down as a general rule, that all statutes for the administration of justice, whether made before or after the charter, so far as they were applicable, should be adopted. *Kilty's Rep. on Stat. Intro.* 6.

The statute 30 *Chas.* 2, *ch.* 7, is reported by *Kilty* to have been found applicable, and to have been used and practiced under, but the same author has considered that the 4 *and* 5 *William and Mary*, *ch.* 24, was not in force. As it regards many of the provisions of this statute, the remark is undoubtedly true ; but so far as regards that part of this statute which relates to the subject under consideration,

we apprehend the compiler was in error, for had it not been for this law, the statute 30 *Chas.* 2, *ch.* 7, would have expired by its own limitation, and it is in the nature of a declaratory law, expounding the statute of 30 *Chas.* 2. If it be true that 30 *Chas.* 2, *ch.* 7, was in force up to the period of the revolution, it could only have been so in virtue of the statute, 4 *and* 5 *William and Mary, ch.* 24, which made the same perpetual. But it is supposed that these statutes are superseded, and rendered entirely unnecessary by our testamentary laws. But a careful examination of them brought us to a different conclusion. Unless the plaintiff can obtain his remedy in the manner he has sought it, insuperable difficulties will be opposed to his recovery by any other course. We speak now on the supposition, that there has been an actual, and not a mere technical *devastavit* of the goods. If the action thus conceived cannot be supported, the present creditor could only look to the administrator *de bonis non*, on the estate of the first testator, and we think there could be no recovery against him, unless such administrator had other goods than those wasted. The act of 1798, *ch.* 101, *sub-ch.* 14, *sec.* 2, makes it the duty of administrators *de bonis non*, to administer all things in that act described as assets, not converted into money, and not distributed or delivered, or retained under the court's direction. In the passage of this law, it is clear that the legislature did not mean to make any thing the subject of administration in the hands of the administrator *de bonis non*, which did not exist in specie. If property had been converted into money, such money was not the subject of administration, but the estate of the first executor or administrator was liable therefor, as for a *devastavit*, although such executor or administrator had failed to deliver over assets in his hands, yet the legislature never contemplated, if such assets had not at the time of the granting of the letters *de bonis non* any existence, but were wasted and destroyed, that they should be the subject of administration. They could not in the nature of things be assets;

damages for such waste might have been made assets, and power might have been given to such administration to recover such damages; but such is not the fact. The acts of assembly are silent upon the subject. The act of assembly of 1820, *ch.* 174, *sec.* 3, extends only to bonds, notes, accounts and evidences of debt, which the deceased executor or administrator, may have taken, received or had as executor or administrator, and to money in his hands, and gives power to the administrator *de bonis non,* to recover the same by an action on the bond. Had this act given a similar remedy in cases of all personal property which had ever come to the hands of the first executor, there would have been no ground to sustain this action, for the remedy in such a state of the law, would have to be sought through the administor *de bonis non,* and through him only ; but where property, which has not been converted into money, and for which no evidence of debt has been taken, but has been wasted and destroyed, to creditors situated like the present plaintiff, there is no remedy, but by a resort to the estate of the delinquent executor or administrator. If indeed that be deficient, or such estate is apparently insolvent, such creditor may ultimately have recourse to the testamentary or administration bond. The judgment is reversed and judgment rendered for the plaintiff on the demurrer.

JUDGMENT REVERSED.