Hagthorp *vs.* Neale & Hook.—1834.

HAGTHORP *et ux. vs.* NEALE, ADMINISTRATOR *de bonis non* OF HOOK.—*December* 1834.

A in 1797, by deed reciting that the grantor was indebted to several persons named in the deed, whom the grantee had agreed to pay, and in consideration of natural love and affection, conveyed to his son H, his executors, &c. for ever, &c. certain leasehold and personal estate upon the following terms, "*Provided always,* and it is the true intent and meaning of these presents, and of the parties hereto, that if the said H, his executors, &c. or assigns, shall absolutely omit, neglect, and refuse to pay the said recited creditors of the said A, their several and respective just debts and demands against the said A, then this indenture shall cease, determine, and be utterly null and void." HELD, that this deed was not a mortgage, but a conveyance upon condition that the grantee would pay certain specified debts, and could only be defeated by proof the debts of the grantor were unpaid, or that the grantee had refused to pay them.

An administrator *de bonis non* cannot disturb the title of a purchaser, or claim the specific property, acquired under an agreement made by his predecessor in the administration, and which it was competent for such predecessor to make. If any loss or injury has been sustained by such agreement, the remedy of all interested would be against the first administrator.

APPEAL from Chancery.

*See* 1 *Gill and John* 270, where this case will be found to have been reported, and the appeal dismissed, as prematurely taken.

The present bill was filed by the appellee, as *administrator de bonis non* of *Anthony Hook,* on the 15th of December 1830, against the appellants, the administrators of *John Hook* and others, purchasers from him, or his representatives.

The object of the bill was, to obtain of the defendants an account of, and payment for certain leasehold and personal estate, which had been conveyed by *Anthony* to *John Hook* his son, by deed, dated the 17th of August 1797; which after reciting, that the grantor was indebted to several persons (who are named) sundry sums of money which the grantee had agreed to pay, and also in consideration of natural love and affection, and of the sum of five shillings, conveyed to the said *John* the said leasehold and personal estate, " for and during all the rest residue, and remainder of the original terms, granted for each respectively, subject to the rents and covenants, reserved and contained, in the above in part recited

lease and assignment; and to have and to hold, the personal property unto him the said *John Hook,* his executors, &c. for ever; Provided always, and it is the true intent and meaning of these presents, and of the parties hereto, that if the said *John Hook,* his executors, administrators or assigns, shall absolutely omit, neglect, and refuse to pay the said recited creditors, of the said *Anthony Hook,* their several and respective just debts and demands against said *Anthony Hook,* then this indenture, and every matter, clause, and thing herein contained, shall cease, determine, and be utterly null and void, to all intents and purposes whatsoever, any thing herein contained, to the contrary thereof, in any wise notwithstanding."

*Anthony Hook,* the grantor died in June 1798, and in the July following, administration on his estate was granted to *John Hook,* the grantee in the above deed. Upon his death which occurred in the year 1800, administration *de bonis non* on the estate of *Anthony,* was granted to *Mary Hook* his widow.

It appeared by the evidence, that after the death of *John Hook,* and the granting of letters of administration *de bonis non,* on the estate of *Anthony Hook* to his widow *Mary,* a petition was filed by her in the Orphan's court, against *Barbara Hagthorp,* one of the present appellants, the widow and administratrix of *John Hook,* claiming the property in the before mentioned deed of the 17th of August 1797; and that after some controversy in that court, it was agreed between the said *Barbara,* and *Mary Hook,* that the property conveyed by that deed with some exceptions should be sold at public sale, by said *Barbara,* and the proceeds divided amongst the representatives of *Anthony Hook,* according to their respective interests, considering the property as belonging to his estate; and that at the sale so to be made, each of the parties should be at liberty to bid, and be credited with the amount which thereafter might appear to be due them as representatives of *Anthony.* The sale was made accordingly, the proportions of the several parties ascertained, and the property purchased by the defendants in this case, or by persons under whom they claim.

The auditor, in pursuance of the order of the Chancellor, which was the subject of the former appeal, 1 *G. & J.* 307, having stated the necessary accounts, the Chancellor, *Bland*, on the 4th of August 1832, ratified and confirmed the same, and vacated, and set aside the various deeds, and conveyances which had been made by the defendants *Hagthorp and wife*, or either of them, or by any person claiming under them, of the property in question.

From this decree, the defendants *Hagthorp and wife* appealed to the court of appeals.

The cause was argued before BUCHANAN, Ch. J., and MARTIN, STEPHEN, and ARCHER, Judges.

MOALE, MARTIN, and MAYER, for the appellants.

1. The deed from *Anthony* to *John Hook* of August 1797, passed the title absolutely, upon a compliance by the grantee with the condition, and from the circumstances of this case, a compliance is to be presumed. From the date of the deed to the present time, none of the creditors of *Anthony Hook*, are heard complaining of the non payment of their claims, and the inference of their satisfaction is therefore irresistible. The recitals in the deed made *John* responsible personally for the debts of *Anthony*, and the property passed to the grantee, subject to the charges. *Stiles vs. Attorney General*, 2 *Atk.* 151. *Grimston vs. Lord Bruce*, 1 *Salk.* 156. *Popham vs. Bampfield*, 1 *Vernon* 79. *Tabor vs. Grover*, 2 *Vernon*, 366, *Brotherton vs. Hatt*, 574.

2. The agreement of *Mary Hook*, administratrix de bonis non of *Anthony Hook*, with *Barbara* the administratrix of *John*, and the long acquiescence of all the parties concerned, is conclusive against the relief sought by this bill. *Toller's Ex'rs.* 256, 386, 477. *Dorsey vs. Smith*, 6 *H. & J.* 63. 6 *Bac. Abr.* 683. *Elliot vs. Merriman*, 2 *Atk.* 42.

The sale which was made in pursuance of that agreement, was in effect made by *Mary Hook* herself, and of course it is not competent, for those who represent her intestate to ques-

tion its validity. If made by *Neale* himself, it could not have been more effectual.

WILLIAMS and LEARNED, for the appellees.

1. The deed upon its face, is a deed of trust. If *Anthony* had lived, and *John* had failed to pay the debts, according to the proviso, the property would have resulted to him, and he being dead, it results to his representatives. It was the obvious intention of the deed to provide for the payment of the debts of *Anthony*, and the superadded consideration will be regarded as surplussage. If the property was to vest absolutely in the grantee, upon the payment of the debts as is contended on the other side, still such payment should be affirmatively shown, which has not been done.

The defence to the complainants bill, rests upon the averment of payment. It is a matter in avoidance and must be proved. *Hart vs. Ten Eyck*, 2 *John. Ch. R.* 87, 91 *and note (a.)* *Jones vs. Sluby*, 5 *Harr. & Johns.* 381.

The appellants contend, that the estate became absolute upon the performance of the condition. But if this be so, that performance must be shown affirmatively by the party who claims the estate.

If the deed from *Anthony* to *John* created a trust in the latter, in regard to the property contained in it, that trust could not be administered by his administrator, the principle being, that trusts do not descend to the representatives of the trustee. *Moses vs. Murgatroyd*, 1 *Johns. Ch. R.* 119. *Kip. vs. Bank of N. Y.*, 10 *Johns. Rep.* 63.

It is impossible to suppose, that *Anthony* intended that the deed to *John* should be absolute, upon his discharging the debts referred to, as by so doing he was stripping himself of his whole estate, and placing himself in a state of entire dependence. The deed upon its face, is to be void, if the debts were not paid, and therefore the considerations of natural love and affection, &c. are to be regarded as merely formal and not substantial inducements with the grantor to its execution. *Walker et al vs. Burrows.* 1 *Atk.* 93. *Brown vs.*

*Jones,* 1 *Atk.* 191.   *Lloyd vs. Spillet,* 2 *Atk.* 149.   *Sculthorp vs. Burgess,* 1 *Ves. Jr.* 92.   2 *Fonbl.* 116.   *Hughes vs. Edwards,* 9 *Wheat.* 495.   *Fisher vs. Fields,* 10 *John. Rep.* 505. *Turner vs. Bouchell,* 3 *Harr. & Johns.* 99.

The agreement referred to can have no effect, because assuming the deed to create a trust, the property vested, in the administratrix of *Anthony Hook,* and *Barbara,* the administratrix of *John,* could convey no title.   *Phillips vs. Thompson,* 1 *Johns. Ch. R.* 131, 146.

The appellee has been guilty of no acquiescence, which could under any circumstances impair his right to recover, but supposing that in ordinary cases, acquiescence could be imputed to him; still as this is a trust created by the act of the parties, limitations do not apply.   *Hovenden vs. Lord Annelsy,* 2 *Sch. & Lef.* 633.

ARCHER Judge, delivered the opinion of the court.

From the most deliberate examination which we have been enabled to give the proceedings in this cause, we have brought our minds to the conclusion, that the deed of August 1797, is neither a mortgage, nor an instrument of writing which from its nature or character combined with all the circumstances attending it, can be considered as throwing upon the grantee any of the duties of a trustee.

It is in our view, a deed upon condition, that the grantee would pay certain specified debts.

In this point of view the estate was cast upon *John Hook,* and could only be defeated, by proof that the debts of *Anthony Hook,* were either unpaid, or that he had refused to pay them.

The record we apprehend furnishes no evidence whatever of any refusal to pay these debts.   On the contrary it is in proof, that in carrying into effect the agreement, between the administratrix of *Anthony Hook,* and *John Hook,* the latter was permitted to retain out of the contemplated sales, the full amount of the specified debts.

This would scarcely have been done, had the debts been unpaid, or had they been paid by any one else, than *John*

3

*Hook,* or his administratrix.   The allowance claimed by *John Hook,* as administrator of *Anthony Hook,* for a sum paid the assignee of *Melbourne,* furnishes evidence we think of too slight a character to enable us to say, that this was one of the specified debts in the deed of August 1797.   There should have been some proof offered that it constituted the same debt.   In estimating this evidence it must not escape our recollection, that the consequence of this testimony, would be to defeat an estate, and that therefore the deductions should be reasonably certain, and should not rest on probability or conjecture.

Throwing this out of the question, *as per se* too feeble to work a forfeiture of the condition, and there is no evidence whatever to show, that a dollar of these debts were ever left unpaid by *John Hook.*   They could not have been paid by the estate of *Anthony Hook,* for the accounts show, that he had not enough of assets left to have paid them.   Indeed the great lapse of time from the deed of 1797, to the filing of this bill, a period of 23 years would lead to the presumption that they had been all paid.   If these views are correct, it would follow necessarily, that the respondents, could in no manner be accountable to the complainants, according to the objects and purposes of his bill.

But supposing the deed to have been one of the character, which the solicitors of the complainants have contended that it is; it was certainly competent for *Mary Hook* administratrix of *Anthony Hook,* to have made the agreement, which it is in proof she did make, with the administratrix of *John Hook,* and to sell the whole property conveyed, or authorise the person in whom was the legal title to dispose of it upon such terms, as she might designate; and if any loss or injury has been sustained by such agreement, the remedy of all interested would be against the administratrix of *Anthony Hook.*   The administrator *de bonis non* of *Anthony Hook,* could surely never again claim the property, which had been thus sold by the agreement, and consent of his predecessor in the administration.   Nor do we apprehend in this aspect of

the case, could any purchasers ever be disturbed in the enjoyment of such purchase, at the sale of her acknowledged agent.

It would indeed appear that the administratrix of *John Hook*, did purchase at the sale of these lots, a greater portion thereof, than by the terms of the agreement it was allowable for her to have done; and to that extent the sales were objectionable. But after the lapse of seventeen years, when considerable portions of the property have actually passed into the hands of purchasers, some of whom may have been wholly ignorant of the terms upon which she was permitted by the agreement to purchase, and the more especially after the administratrix of *Anthony Hook*, had by her course of conduct sanctioned what had been done, it appears to us, it would be entirely too late now, to demand that the property must be given up, and the rents and profits accounted for.

And even to the extent of over purchases, by the administratrix of *John Hook*, and where she and her assigns conuzant of this agreement, may be still in possession, we are led to the conclusion from the acts, and conduct of the parties, that this was sanctioned by the administratrix of *Anthony Hook*. We are at a loss otherwise to account for the releases which have been executed, and for several of the conveyances.

In any aspect therefore which we have been enabled to take of this case, we are of opinion that the complainant is not entitled to a decree, *and do therefore reverse the decree of the Chancery court, and dismiss the bill with costs in both courts, as respects the appellants, Hagthorp and wife.*

DECREE REVERSED.