Mr. Justice Cox
delivered the opinion of the court.
This case comes to us on exceptions to the rulings of the court below. The principal exception is to an instruction given by the court to the jury.
The facts assumed as the basis of the instruction are, that Horatio Ames, deceased, had a large claim against the United States ; that Clifford Arrick was the attorney to prosecute the claim for him in his lifetime, and, after his death, continued to act in that capacity for Charlotte L. Ames, his administratrix ; that Arrick collected on aecouut of said claim, besides other amounts, the sum of $39,955, for which the administratrix gave her receipts to the United States ; that she allowed Arrick $33,574.36 for his services in prosecuting the claim, and took receipts from him for that amount; that she .filed an account in the Orphans’ Court of' this District in which she charged herself with the $39,955, and claimed credit for the amount so allowed to Arrick, filing his receipts as vouchers therefor, and showing a balance for distribution of $3,650.42 ; that the Orphans’ Court, in settling the account of the administratrix, found her chargeable with a balance of $34,876.75, removed her from office for failure to give additional security, appointed N. Wilson, esquire, administrator d. b. n., c. t. a., and directed the *229 administratrix to pay over the said sum of $34,876.75 to the administrator d. b. n., the plaintiff.
The whole amount collected by Arrick, as far as appears, was retained by him, and this suit is brought ^against him by the administrator d. b. n., claiming to be entitled to the above balance by virtue of sections 974, 975 and 976 of the Revised Statutes, which are the reproduction of an act of Congress of February 20, 1846 (9 Stats. at Large, p. 4), in the following words, viz.:
“ Sec. 974. In all cases where the court appoints administrators, or takes bond from any executor of a last will and testament, and shall at any time become satisfied that the security is insufficient by reason of the removal or insolvency of any of the sureties on the bond, or by reason of the penalty of the bond being too small, or from any other cause, it shall be lawful for the court to order and require the administrator or executor to give other or further security.”
“ Sec. 975. The court shall have power to remove any administrator or executor who fails or refuses to comply with such order, and to appoint an administrator in his stead.”
“ Sec. 976. The court shall further have power to order and require any assets or estate of the decedent, which may remain unadministered, to be delivered to the newly appointed administrator de bonis non, and to enforce a compliance with such order by fine and attachment, or any other legal process.”
The plaintiff, the administrator d. b. n., claims that the funds shown to have been collected and retained by the defendant, Arrick, wrere an unadministered part of the estate of Horatio Ames, to which he became entitled by virtue of his appointment and the order of the Orphans’ Court, and the question presented in the record and discussed in the argument is, whether the fund in question is unadministered in the sense of the statute.
The term “ unadministered'1'1 is a legal and technical one, and its signification, as employed in the act of Congress, is to be.sought for, not in the dictionaries, but in- antecedent legislation and judicial decisions.
*230 By the English law, as administered in the ecclesiastical courts, an administrator, who is displaced, is required to account directly to the persons beneficially interested in the estate for money collected or realized from sales by him. The administrator d. b. n. only administers goods, chattels and credits of the deceased which have not been administered. He is entitled to the goods and personal estate remaining in specie.
Money which belonged to the original intestate, and was kept by itself so as to be capable of identification as the property of said intestate, would pass to the administrator de bonis non. Beall vs. New Mexico, 16 Wallace, 535.
The old authorities have gone a step farther and held that money collected by an executor or administrator in that character, and laid by itself, will also pass to the administrator d. b. n., because, as Salkeld says (p. 306),if the goods of the testator remain in specie, they shall go to the administrator d. b. n., because in that case it is notorious which were the goods of the testator, and there is the same reason where money is kept by itself.
Subject to this, it is the rule, that if a change was made by the executor or administrator in the condition of the property left by the testator or intestate, as by taking a note for- a debt due the decedeut, or collecting such a debt, so much of his estate was considered administered, in a technical sense, so as to make the executor or administrator and his sureties directly responsible for its value to the parties interested in the estate, and in case of his death an administrator d. b. n. could only take other property not so controverted but remaining in specie. And such was the law in Maryland. See Hagthorp vs. Hook, 1 G. & J., 270; Sibley vs. Williams, 3 G. & J., 52; Neale vs. Hagthorp, 7 G. & J., 13; Lemmon vs. Hall, 20 Md., 171; Kearney vs. Sascer, 37 Md., 264.
The act of assembly of 1798, ch. 101, sub-ch. 14, virtually defines the term “ not administered.” After giving the form of letters testamentary, by which administration of all the goods, chattels and credits of the deceased is granted to *231 the executor, it provides that the form of letters of administration d. b. n. shall be the same, except that the words, “ already not administered,” shall be added in their proper place. And then it provides that the authority conferred by such letters shall be to administer all things described in the act as assets not converted into money, and not distributed or delivered or retained by the former executor or administrator under the court’s direction. The necessary implication is, that things converted into money, or specific things distributed or delivered or retained by the first executor or administrator under order of the court, do not pass to the administrator d. b. n. And as he is to administer all the goods, &c., not already administered, it necessarily follows that assets converted into money were, in the sense of the law, administered. Every species of personal property belonging to the deceased was assets ; consequently, choses’ in action are such, and, when collected, they are converted into money, and, in the sense of the statute, administered. This is the construction given to the act of 1798 by the Maryland authorities. The same view was taken by the United States Supreme Court in De Valengins’ Administrators vs. Duffy, 14 Pet., 282. The administrator of a decedent had collected a claim against a foreign government, or, in other words, converted it into money, invested this money in coffee, and afterwards sold the latter, and, before distributing the money, died. Before his death, however, another person, who claimed to be the real owner of the original claim, brought suit against the administrator for the money collected by him. After the latter’s death, on the question whether the suit should b.e continued against the administrator’s representatives, or the administrator d. b. n., Judge Taney said:
“ If this transaction had taken place before the act of assembly of Maryland of 1820, ch. 174, the suit must unquestionably have been continued against the representatives of Neal (the administrator), and could not have been sustained against the administrators d. b. n. of De Valeugin (the original decedent), because the property which Neale *232 had received as administrator, was converted into money in his lifetime ; and must, therefore, have been accounted for by his administrator,- and would not have passed to the administrator d. b. n. of the-former intestate.”
The act of 1798, as thus interpreted, was the law of this District also.
The late Circuit Court of the District, in 1823, in the case of Calder vs. Pyfer, 2 Cr., 430, held, that an administrator d. b. n. could not bring an action for the price of goods of the decedent sold by the original administrator.
In the case of Ennis et al. vs. Smith et al., 14 How., 400, 416, the Supreme Court says:
“We understand by the laws of Maryland, as they stood when Congress assumed jurisdiction over the District of Columbia, that the property of a deceased person was considered to be administered whenever it was sold, or converted into money by the administrator or executor, or in any respect changed from the condition in which the deceased left it. It did not go to the administrator d. b. n., unless on the death of the executor or administrator it remained in specie or was the same then that it was when it came to his hands. When the assets have been changed, it is said in Maryland, that the property has been administered.”
They further say that the obligations of Bomford, administrator d. b. n. of Kosciusko, and of his sureties, are determined by what has been the judicial interpretation and administration of it in Maryland, uncontrolled by any decisions of other courts elsewhere, and that it must be admitted that the original sureties of Bomford as administrator d. b. n. of Kosciusko were not, under the Maryland law, bound for assets in his hands in the shape of money collected by Lear, original administrator of Kosciusko, and received by him as executor of Lear.
This, therefore, was clearly the condition of the law of this District in 1846, to wit; that when an executor or original administrator had collected money, or choses in action, or converted chattels into money by sale, this much of the estate was considered as technically administered, so as not *233 •to go into the hands of an administrator d. b. n. as unadministered assets, at least unless the money so received was laid aside, so as to be identified as the propei’ty of the decedent.
Congress then passed the act of February 20, 1846, which is embodied in the sections of the Revised Statutes already quoted, providing that in case of the removal of an administrator or executor for refusal to give additional security, the unadministered assets or estate may be ordered to be delivered to the administrator d. b. n. appointed in his place.
This act is in pari materia with the prior statute of Maryland, and of course is to be interpreted and construed with reference to that, and the authoritative judicial interpretations of it.
In fact, we can conceive of nothing else to which we can refer for explanation of the term administered as applied to the assets of a decedent. The legislature is presumed to be acquainted with existing laws and their established interpretation, when in the act of amending them ; and when it employs terms used in those laws, the meaning of which has been judicially ascertained, how can one escape the con.clusion that they are employed in the sense so ascertained ?
It is argued that this interpretation makes the act of 1846 fail of accomplishing its object; that where the safety of an estate in an executor’s hands, is jeopardised by the death or insolvency of his sureties, it is just as Important that money, as that specific property, should be turned over by him to an administrator d. b. n., if he fails to give additional security, and, therefore, it is urged that Congress must have included this, but must have used the term “ unadministered ” in a popular, instead of a legal and technical sense.
The argument is forcible to show that the act of Congress is defective, and that it ought to have applied to money, as well as to specific property, just as the legislation of Maryland in 1820 does, but it does not justify the inference that Congress intended something more than is imported by the *234 language used, which has an ascertained legal signification,
It is also urged that in other cases under the act of Maryland of 1798, in which the letters of a living executor or administrator are revoked, as where a will is discovered and an executor appointed, or a new administrator is appointed because of the failure of an executor or original administrator to return an inventory, or to render an account, he is required to deliver up to his successor all the property, goods, chattels and personal estate of the deceased, and as this statute is iu pari materia, and there is the same reason for making its operation equally broad, it ought to be construed as extending to the whole estate.
But, in the first place, it seems to be a gratuitous assumption that the act of 1798, in the cases mentioned, does entitle the new administrator to money collected by his predecessor. It does not in terms; it simply entitles him to all the estate of the deceased. But the theory of the cases we have examined seems to be, that when the specific property which belonged to the deceased has been converted into money, the money is the property of the executor or administrator, and is not the estate or property of the deceased, and the executor is simply a debtor to the persons interested in the estate, to the extent of that money. It, therefore, may reasonably be maintained that the act of assembly in the cases referred to, applies only to specific property. But if it were otherwise, the contrast between the act of Congress and these provisions of the act of 1798, makes it impossible to construe them as embracing the same subject. The act of 1798 requires all the property to be turned over, the act of Congress only that which may remain unadministered to be so turned over. It, therefore, establishes a distinction between administered and unadministered assets. In the sense of the terms contended for by the plaintiff, to wit, that administered means distributed and fully administered, there could not be assets which are administered ; for, as soon as they are distributed to legatees or distributees, they cease to be assets of the estate at all. It was needless to confine the provision to assets remaining unadministered, *235 for there could be no other assets. It would have sufficed to dii’ect all the property or assets to be turned over. We are bound to hold that the use of the term unadministered had an object, and to give the meaning theretofore settled and ascertained.
Now, to apply these reflections to the present case. Mrs. Ames, widow and administratrix of Horatio Ames, deceased, prosecuted a claim owned or represented by said Horatio Ames, against the United States, by her attorney, Arrick. Arrick recovered the money, Mrs. Ames giving her receipts in full to the United States, and charging herself in the Orphans’ Court with the amount so collected. This was a complete conversion or change of the chose in action or claim which belonged to Horatio Ames when he died. The claim was reduced to possession, converted into cash, collected. It cannot make a shadow of difference that this was done through an agent. Mrs. Ames consummated it by her own act of receipting to and discharging the United States. No subsequent infidelity or default ,of her agent could make it any less a collection of the claim by her, which made her and her sureties responsible, for the money to the creditors and distributees of the deceased. She could not treat this as an unadministered specific thing belonging to the estate of the deceased, in the shape of a chose in action against Arrick, and, by turning the chose in action over to the administrator d. b. n., discharge herself and her sureties. If she is chargeable for this money, it is because she has collected it and converted the original chose in action of the deceased into this money.
It was attempted in argument to liken this case to that put by Salkeld and by Bacon’s Abridgment of money of the testator laid aside by the executor as original administrator; but. the evidence stated in the bill of exceptions shows no such case. As to the bulk of the money collected, viz., the sum of $33,574.36, the administratrix not only did not lay it aside as the money of the deceased, but virtually paid it away to Arrick for his own use, by allowing him to retain it as his own. It could in no sense, then, be said to be set aside *236 as the money of the deceased. Very much the same may be said of the balance of the fund. As far as appears, it was collected by the agent of the administratrix, but never paid over to her, and constitutes simply a debt from him to her. She is responsible to the parties in interest for it, but the debt of Arrick is a debt to her. The original chose in action has been converted by her into that. The money itself is not on deposit anywhere to the the credit of the estate, or otherwise earmarked. Nothing further appears than that the administratrix has collected this claim, and is generally chargeable with its proceeds in favor of the creditors or distributees, and this makes a ease of technical administration. Of course, to admininister in this sense is not to administer fully in the sense that would sustain a plea of plena administravit, but its effect is only to make the administratrix responsible to the parties interested in the estate directly, instead of through the administrator d. b. n.
Without entering into a verbal criticism of the instruction given by the court below, it is sufficient to say that we think it substantially gave the law to the jury as we have declared it. This view renders it unnecessary to consider the other exception, which was to the exclusion of evidence as to the value of Arrick’s services.
The new trial is refused.